UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
ROBERT C. BONJORNI, *et al.*,      )
                                   )   Case No. C11-1841RSL
                    Plaintiffs,    )
       v.                          )
                                   )   ORDER GRANTING DEFENDANT'S
WELLS FARGO BANK, N.A.,            )   MOTION TO DISMISS
                                   )
                    Defendant.     )
_____)

This matter comes before the Court on "Defendant Wells Fargo Bank's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted." Dkt. # 9. In the context of a motion to dismiss on the pleadings, the allegations of the complaint are taken in the light most favorable to plaintiffs. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). A claim will not be dismissed unless the allegations in support thereof, taken as a whole, fail to give rise to a plausible inference of actionable conduct. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). Although the Court generally confines its review to the contents of the complaint (Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996)), Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted (United States v.

1  Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003)). Having reviewed the memoranda, declarations,
2  and exhibits[1] submitted by the parties, the Court finds as follows:

### BACKGROUND

In June 2007, plaintiffs approached defendant Wells Fargo Bank, N.A., to obtain a mortgage. Although plaintiffs were seeking a thirty-year fixed rate loan, they were told they did not qualify and were offered an adjustable rate loan. Plaintiffs were also told that, if the United States Treasury rate decreased, they could lower the interest rate on their loan by paying $2,000. On June 11, 2007, plaintiffs executed an "Initial Interest Adjustable Rate Note" in favor of defendant Wells Fargo Bank, N.A., in the amount of $892,000. Pursuant to the terms of the note, the first ten years of payments on the loan would be applied to interest only and the interest rate would be 6.0%. After July 2017, the interest rate would vary with the United States Treasury rate, and plaintiffs' monthly payment would include both principal and interest, fully amortized for payoff in July 2037.

The application for the loan and the deed of trust that secured it are dated June 15, 2007.[2] The application states that plaintiff Bonjorni had a monthly income of $18,000 and that plaintiffs owned real estate valued at $1.2 million. Plaintiffs initialed the page on which these statements were made and signed the application directly under a representation that "the information provided in this application is true and correct as of the date set forth opposite my

---

[1] Plaintiffs do not object to judicial notice of the documents attached to the Declaration of Matthew R. Overton (Dkt. # 11). The Court also takes judicial notice of documents attached to the Declaration of Benjamin J. Roesch (Dkt. # 10). These documents are government records from the Washington State Department of Licensing, the King County Superior Court, and the King County Recorder's Office. Although plaintiffs object to consideration of these documents, they do not seriously contest their authenticity. Because the facts set forth in the documents are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the documents have been considered when determining whether plaintiffs have asserted a plausible claim for relief.

[2] The parties do not acknowledge, much less explain, why the application is dated four days after plaintiffs signed the note.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS                -2-

signature . . . ." Decl. of Matthew R. Overton (Dkt. # 11), Ex. B. Mr. Bonjorni's tax returns from 2003, 2004, and 2005 showed that his average monthly income was $8,170.14 during those three years. The schedule of real estate that was part of the application shows that plaintiffs had already sold the $1.2 million property when they sought a loan from Wells Fargo. Wells Fargo was aware of both the tax returns and the sale of the property when its representative filled in the application for plaintiffs' signatures.

Plaintiffs allege that they went through "the typical closing process" where the loan documents were presented, they were told to "sign here" and "sign there," they did not have additional time in which to review the documents, and they simply relied on defendant's assurances that the loan documents reflected their previous discussions. Complaint (Dkt. # 2) at ¶ 3.8 and ¶ 3.10. Plaintiffs allege that the language of the loan documents was unintelligible, such that plaintiffs were unaware of "the true nature of the agreement and the extraordinary costs and risks that were contained within." Complaint (Dkt. # 2) at ¶ 3.9. Plaintiffs suggest, without clearly stating, that they did not understand that their monthly payment would increase significantly after July 2017. Plaintiffs also allege that they would not have closed on the loan had Wells Fargo not told them that they could lower the interest rate in the future.

## DISCUSSION

### A. **Standard for Rule 12(b)(6) Motion**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The complaint must indicate more than mere speculation of a right to relief. Id. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory or (ii) insufficient facts under a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc.,

749 F.2d 530, 534 (9th Cir. 1984).

**B.      Breach of Contract and the Covenant of Good Faith and Fair Dealing**

Plaintiffs do not identify any provision of the note or deed of trust that was breached. Rather, plaintiffs argue that defendant breached the obligation of good faith and fair dealing that is implied as part of virtually every contract. Plaintiffs allege that defendant violated this obligation when it misrepresented information on the application and hid the misrepresentations in "an impenetrable maze of incomprehensible information." Response (Dkt. # 15) at 12.

The implied covenant of good faith and fair dealing "obligates the parties to cooperate with one another so that each may obtain the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569 (1991). The duty relates only to performance of the terms of an existing contract: there is no "free-floating" duty of good faith that attaches during negotiations or that injects new substantive obligations into the contract. Id. at 569-70. Plaintiffs' claims all relate to the creation of the contract, not its performance. Plaintiffs have not alleged, for example, that defendant refused to release the loan proceeds as promised, hindered plaintiffs' repayment efforts, or otherwise thwarted performance of the bargain. The breach of contract claim therefore fails as a matter of law.

**C.      Predatory Lending and Privacy Violations**

Plaintiffs have abandoned their second cause of action in favor of their breach of contract claim. Response (Dkt. # 15) at 10-11.

**D.      Bad Faith**

The basis for plaintiffs' bad faith claim is unclear. In their complaint, plaintiffs allege that the Federal Reserve Board investigated Wells Fargo's lending practices and imposed a multi-million dollar fine. Plaintiffs allege that the investigation revealed a pattern and practice of "breach of good faith, inappropriate, and predatory lending practices, fraud, and misrepresentation." Complaint (Dkt. # 2) at ¶ 6.2. Plaintiffs then conclude that "Wells Fargo

Bank has acted in bad faith."

Plaintiffs do not identify a statute or common law duty that gives rise to an obligation of "good faith," the breach of which could result in a cause of action in plaintiffs' favor. Plaintiffs have separately alleged a breach of the implied covenant of good faith and claims for fraud and misrepresentation: the validity of those claims are considered elsewhere. Nor have plaintiffs shown that the Federal Reserve Board's findings are relevant here. Plaintiffs do not allege that Wells Fargo's conduct toward them was the same as that which triggered the Federal Reserve Board investigation or that Wells Fargo owed and breached a duty to plaintiffs. The "bad faith" claim as asserted in the complaint therefore fails.

In their opposition to the motion to dismiss, plaintiffs suggest that courts regularly punish bad faith and that, "given the complex maze of inaccurate information and outright misrepresentations" in this case, a remedy must be available. Opposition (Dkt. # 15) at 11. The cases on which plaintiffs rely involve the award of attorney's fees and do not create a free-standing cause of action for "bad faith." Having failed to show any basis in state or federal law for a "bad faith" claim in the context of this case, this cause of action will be dismissed.

### E. Fraud/Misrepresentation

Plaintiffs allege that Wells Fargo committed fraud when it intentionally misrepresented plaintiffs' income on the loan application.[3] The Court will assume, for purposes of this motion, that Mr. Bonjorni did not earn $18,000/month in June 2007 when plaintiffs submitted the loan application[4] and that Wells Fargo was aware of this fact. Plaintiffs' fraud claim nevertheless fails. A claim of fraud requires that plaintiffs be ignorant of the falsity of the

---

[3] Plaintiffs do not base their fraud claim on the alleged representation regarding plaintiffs' ability to lower the interest rate on their loan by paying $2,000. Even if such a claim were asserted, the factual allegations regarding this statement do not satisfy the pleading requirements of Rule 9(b).

[4] Plaintiffs provide information regarding Mr. Bonjorni's monthly income in 2003, 2004, and 2005, but are strangely silent regarding his finances in 2007.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS           -5-

1 representation and that plaintiffs reasonably rely on the representation to their detriment. All
2 parties to the transaction were apparently aware of how much Mr. Bonjorni made. Mr. Bonjorni
3 had an obligation to review the loan application before signing each page and attesting to its
4 accuracy. Whether he read it or not is irrelevant to the viability of his fraud claim. If he read it,
5 he would have seen the misrepresentation, recognized it as a falsehood, and could not reasonably
6 rely upon it. If he did not read the application, he was unaware of the misrepresentation and
7 therefore could not have relied upon it.

8 Plaintiffs also seek to hold defendant liable for its implied assertions that (a) the
9 loan product offered to plaintiffs was appropriate and suitable for them and (b) plaintiffs were
10 capable of repaying the loans as structured. Complaint (Dkt. # 2) at 7.5. Defendant did not
11 make either of these statements: plaintiffs inferred them from the fact that Wells Fargo was
12 willing to lend them money on the specified terms. This theory fails for a number of reasons.

13 First, Wells Fargo's willingness to lend plaintiffs money was not necessarily based
14 on its confidence that they could repay the loan. Although plaintiffs had requested a fixed-rate
15 thirty-year loan, they were told that they did not qualify for that product. They subsequently
16 signed a note conspicuously titled "Initial Interest Adjustable Rate Note" with an initial interest-
17 only monthly payment of $4,460.00 until July 2017, at which point the interest would fluctuate
18 with the United States Treasury rate and plaintiffs would begin to pay down the principal.
19 Plaintiffs were, in effect, required to pay more for their loan because they were not optimal
20 borrowers. Defendant made no representations regarding plaintiffs' future ability to pay and, in
21 fact, took a deed of trust to protect itself in case of default.

22 Second, plaintiffs do not allege that, when this loan was originated in June 2007,
23 they were unable to make the stated monthly payment of $4,460.00 or that this particular product
24 was in any other way unsuitable for them. At the time, interest-only, adjustable rate, and balloon
25 loans were common given the generally held belief that credit would remain readily available:
26 borrowers contractually obligated themselves to huge monthly payments at the end of the loan

"knowing" that they could obtain another low-payment product to pay off the original loan before the payment increase materialized. Plaintiffs had an opportunity to shop for loan products and select the lender of their choice. Given their understanding of the real estate and financial markets as of June 2007, plaintiffs ultimately decided to accept the interest-only loan offered by defendant rather than search for other products or forego the property they ultimately purchased. Whether the product was "appropriate" or "suitable" for them at the time was a subjective assessment that both parties to the transaction made (or did not make) for themselves.

Finally, the mere fact that the loan would eventually cost plaintiffs a lot of money per month does not establish fraud. The methods by which principal and interest would be calculated over time were disclosed in the document presented to plaintiffs. After ten years of fixed payments, the monthly payment amount would begin to fluctuate and could potentially sky rocket. The interest rate on the loan could go as high as 11% per year, and the monthly payments toward principal after July 2017 would be significant (approximately $3,600.00 per month to bring the loan amount down to $0.00 by July 2037). These terms were disclosed or easily calculable. Despite plaintiffs' allegation that they were confused regarding the nature of the loan and/or the financial risks they were undertaking, they do no identify any ambiguity in the contract or a fact of which they were unaware. Defendant did not assure plaintiffs that they would be able to make payments throughout the term of the loan or that they would be able to refinance their loans at favorable rates whenever it became necessary to avoid payment of adjustable interest rates and/or onerous principal payments.

Even if the Court were to find that defendants had made a false statement of existing fact with knowledge of its falsity and that plaintiffs had reasonably relied thereon to their detriment, the applicable three year statute of limitations would bar this cause of action. RCW 4.16.080. Any fraud or misrepresentation occurred in June 2007. Plaintiffs were, or should have been, aware of the false statements at that time. Because the complaint was not filed in state court until October 2011, the fraud and misrepresentation claims are time-barred.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS                -7-

1  **F.     Unconscionable Behavior**

2           Plaintiffs allege that the promissory note they signed is unconscionable because
3  Wells Fargo owed plaintiffs a fiduciary duty which it breached when it falsified documents and
4  pushed plaintiffs into a relatively expensive loan product in order to maximize its own profits.
5  Complaint (Dkt. # 2) at ¶ 8.2. Plaintiffs apparently concede that a fiduciary duty did not, in fact,
6  exist between the lender and the borrowers, but nonetheless argue that the misrepresentation of
7  their income and assets on the loan application and the incomprehensible form of contract made
8  the note procedurally unconscionable. Opposition (Dkt. # 15) at 11.

9           "The existence of an unconscionable bargain is a question of law for the courts"
10 after consideration all of the circumstances surrounding the transaction. <u>Nelson v. McGoldrick</u>,
11 127 Wn.2d 124, 131 (1995).[5] A contract is procedurally unconscionable if a party is not given a
12 meaningful opportunity to consider and agree to its terms. <u>Zuver v. Airtouch Comm'ns, Inc.</u>,
13 153 Wn.2d 293, 304-07 (2004). Plaintiffs allege that they went through a "typical closing
14 process." Complaint (Dkt. # 2) at ¶ 3.8. They have not identified any circumstances which
15 differentiate their receipt, review, consideration, and signing of the note from that of every other
16 residential borrower. The note plaintiffs signed is a uniform instrument created or approved by
17 Freddie Mac for use with initial interest adjustable rate mortgages. Although the form is dense,
18 it is only five pages long (one of those pages contains nothing but signatures), is broken down
19 into sections, and clearly discloses those elements that were inserted by the lender. All of the
20 critical terms of the contract – including the immediate disbursement of $892,000 to plaintiffs in
21 exchange for a promise to pay back the principal plus interest at the specified rates over thirty

---

[5] The Washington Supreme Court identified as an open question whether procedural irregularities alone would invalidate a contract provision. <u>Adler v. Fred Lind Manor</u>, 153 Wn.2d 331, 346-47 (2004). <u>See</u> also <u>Zuver v. Airtouch Comm., Inc.</u>, 153 Wn.2d 293, 303 n.4 (2004) (noting that the Supreme Court has "not explicitly addressed whether a party challenging a contract must show both substantive and procedural unconscionability," but ultimately invalidating terms of the agreement that were substantively, but not procedurally, unconscionable). For purposes of this motion, the Court assumes that procedural unconscionability, standing alone, would make a contract unenforceable.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS                    -8-

years – were disclosed in such a way that the average borrower could not miss them if he read the contract. Plaintiffs do not identify any provision that caused them confusion or show that they were denied a reasonable opportunity to understand the import of the document they were signing. They have, therefore, failed to allege facts from which one could find that they were deprived of meaningful choice when signing the note.

**G.  Consumer Protection Act**

The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Plaintiffs allege that defendant engaged in deceptive acts (a) by selecting an inappropriate loan product for the subject property, (b) by "representing itself as a Lender licensed to work in Washington State," and (c) by engaging in lending practices "that were contrary to what the plaintiffs believed were truthful in [] their best interest." Complaint (Dkt. # 2) at ¶¶ 10.2 - 10.3. Plaintiffs have not alleged, and there is no reason to assume, that Wells Fargo was not authorized to conduct business in the state of Washington in June 2007. The remaining conduct identified by plaintiffs, even if assumed to be "unfair or deceptive," was aimed solely at plaintiffs and does not impact the public interest.[6] Plaintiffs cannot, therefore, satisfy the third element of a CPA claim. In addition, the unfair conduct of which plaintiffs complained occurred more than four years before plaintiffs filed this action.

---

[6] The allegation that "[t]hese unfair and deceptive acts or practices in the conduct of trade or commerce affect the public interest" merely parrots the elements of the cause of action and has been ignored under Twombly, 550 U.S. at 555.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS                    -9-

1 This claim is therefore time-barred under RCW 19.86.120.[7]

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss (Dkt. # 9) is GRANTED.

Dated this 9th day of March, 2012.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

---

[7] In their memorandum, the parties refer to or make arguments regarding a number of statutes including the Truth in Lending Act, the Mortgage Brokers Practices Act, and the Real Estate Settlement and Procedures Act. Plaintiffs have not, however, asserted separate causes of action under these statutes.